## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA.,

     Plaintiff,

v.

E. Seafood LLC; and Edwin Baboolall,

     Defendants.

Case No. _____

In Admiralty

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and acting on behalf of the United States Coast Guard, files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1.   This action is brought by the United States under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701-2761, to recover removal costs arising from the mitigation and clean-up of oil pollution from fishing vessel ("F/V") OUR BOYS ("the Vessel") into the waters of Tampa Bay.

2.   On March 8, 2023, F/V OUR BOYS sank in the East Bay Channel of Tampa Bay, discharging oil into the waterway and presenting a substantial threat of further discharge of oil. The U.S. Coast Guard responded to the sinking and assumed responsibility for the removal of oil from the sunken Vessel. From March 8 to March

1

29, 2023, the Coast Guard, in conjunction with contractors, worked to remove discharged oil and mediate the substantial threat of a further discharge of oil until the Vessel was completely removed from the waterway, ending the threat.

3. Federal oil spill removal actions may be financed through the Oil Spill liability Trust Fund ("the Fund"). *See* 26 U.S.C § 4611. The Fund can be used for, among other purposes, the payment of federal and state removal costs; certain claims against the Fund related to uncompensated removal costs; and certain federal administrative, operational, and personnel costs and expenses under OPA. 33 U.S.C. § 2712(a). In this case, the Fund was used to mitigate the discharge of oil and the substantial threat of discharge of oil from F/V OUR BOYS and to remove oil discharged from the vessel into the navigable waters of Tampa Bay.

4. OPA makes responsible parties strictly liable for removal costs arising from vessels that discharge oil or pose a substantial threat of the discharge of oil into navigable waters of the United States. 33 U.S.C. § 2702(a).

5. The United States brings this action against Defendants E. Seafood LLC and Edwin Baboolall for the recovery of removal costs resulting from the substantial threat of discharge of oil, and actual discharge of oil, from F/V OUR BOYS into navigable waters in and around Tampa Bay under 33 U.S.C. § 2702. Specifically, the United States seeks reimbursement of $884,894.66 in removal costs already paid by the Fund, plus prejudgment interest, pursuant to 33 U.S.C. § 2705.

6. The United States also seeks a declaratory judgment on liability for removal costs and damages against the Defendants, pursuant to the Declaratory

Judgment Act, 28 U.S.C. § 2201(a), and 33 U.S.C. §§ 2702(a), 2705, 2715, and 2717(f)(2), that is binding in this action and will be binding on any subsequent action or actions against the Defendants for any further removal costs.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter and the parties in this matter pursuant to 33 U.S.C § 2717(b), which provides that the United States District Courts have exclusive original jurisdiction over all OPA matters, as well as 28 U.S.C. §§ 1331, 1335, and 1345.

8. Venue is proper in this District pursuant to 33 U.S.C. § 2717(b), which provides that venue shall lie in any district in which discharge, injury, or damages occurred. In this case, the Coast Guard incurred costs responding to the Vessel's discharge of oil in this District. Venue is also proper in this District under 28 U.S.C. § 1391(b) because Defendants Edwin Baboolall and E. Seafood LLC conducted business in this District and because the incident that gives rise to these claims occurred in this District.

9. Authority to bring this action is vested in the United States Department of Justice by 28 U.S.C §§ 516 and 519.

10. This action includes an admiralty and maritime claim against Defendants, within the meaning of Fed. R. Civ. P. 9(h).

## PARTIES

11. F/V OUR BOYS was a 66.7-foot-long, wooden hulled fishing vessel displacing 102 gross tons. The Vessel was constructed in 1979.

3

12. At the time of the incidents that gave rise to this action, the Vessel was owned by Defendant E. Seafood LLC and operated by Defendant Edwin Baboolall.

13. E. Seafood LLC is a business corporation that has existed under the laws of Florida since 2008.

14. At the time of the incidents that gave rise to this action, Edwin Baboolall was the only listed registered agent, manager, or managing member of E. Seafood LLC.

15. At the time of the incidents that gave rise to this action, the registered address, current mailing address, and current principal place of business for E. Seafood LLC were listed as 8718 Busch Oaks Street, Tampa, Florida 33617.

16. At the time of the incidents giving rise to this action, the mailing address for Edwin Baboolall was also listed as 8718 Busch Oaks Street, Tampa, Florida 33617. Public records show that this address is a single-family home.

17. At the time of the incidents giving rise to this action, E. Seafood LLC was listed as owner and managing owner of F/V OUR BOYS and held title to the Vessel.

### STATUTORY AND REGULATORY BACKGROUND

18. Congress enacted OPA, codified at 33 U.S.C. §§ 2701-2761, in 1990.

19. Through OPA, Congress imposes strict liability on owners and operators of vessels that discharge oil into navigable waters or pose a substantial threat of the discharge of oil into navigable waters for costs to clean up the oil or mitigate the threat. *See In re Needham*, 354 F.3d 340, 244 (5th Cir. 2003); *United States v. Ships Int'l Inc.*, 779 F. Supp. 3d 1235, 1238 (W.D. Wash. 2025).

4

20.  OPA provides "Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) that result from such incident." 33 U.S.C. § 2702(a).

21.  OPA defines "removal costs" as "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of a discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident." 33 U.S.C. § 2701(31).

22.  OPA defines "incident" as "any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil." 33 U.S.C. § 2701(14).

23.  OPA defines "responsible party" to include, "[i]n the case of any vessel, any person owning, operating, or demise chartering a vessel." 33 U.S.C. § 2701(32). Where there is more than one responsible party, liability is joint and several. *See, e.g.*, *In re Settoon Towing LLC*, 722 F. Supp. 2d 710, 714 (E.D. La. 2010); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 844 F. Supp. 2d 746, 754 (E.D. La. 2012).

24. OPA defines "vessel" as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water, other than a public vessel." 33 U.S.C. § 2701(37).

25. OPA defines "navigable waters" as "waters of the United States, including the territorial sea." 33 U.S.C. § 2701(21).

26. Under OPA and its implementing regulations, the Federal On Scene Coordinator ("FOSC") is the official who designates the source of a discharge or threatened discharge and initiates appropriate activities to be taken in response to a discharge or substantial threat of discharge. 33 U.S.C. §§ 1321(a)(21), 1321(c); 40 C.F.R. §§ 300.120, 300.130(b); 33 C.F.R § 1.01-80(d).

27. The Administrative Procedure Act ("APA") provides that "[t]o the extent necessary to [make a] decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

28. OPA allows only three limited defenses to responsible parties' strict liability: they must prove that the discharge or substantial threat of discharge was the sole fault of (1) an act of God, (2) an act of war, or (3) an act or omission of a third party, or some combination of those three. 33 U.S.C. § 2703(a). However, the third-party defense does not include acts or omissions of an employee or agent of the

6

responsible party, nor a third party whose act or omission occurs in connection with any contractual relationship with the responsible party, unless the responsible party proves that they (A) exercised due care with respect to the oil concerned, and (B) took precautions against foreseeable acts or omissions of any such third party. *Id.*

29. OPA requires that "[a]n action for recovery of removal costs . . . be commenced within 3 years after completion of the removal action. In any such action described in this subsection, the court shall enter a declaratory judgment on liability for removal costs or damages that will be binding on any subsequent action or actions to recover further removal costs or damages." 33 U.S.C. § 2717(f)(2).

## GENERAL FACTUAL ALLEGATIONS

### I.    Incident and Response by U.S. Coast Guard

30. On March 8, 2023, U.S. Coast Guard Sector St. Petersburg received a report of a sheen of oil in East Bay channel, an arm of Tampa Bay. Coast Guard Pollution Responders traced the sheen to docks in the vicinity of Superior Seafoods, located at or near 2625 Causeway Blvd. at the Port of Tampa Bay Berths 160-170. There, they found F/V OUR BOYS sunken at the pier and discharging oil.

31. While sunken, part of the Vessel remained above the waterline, and the Vessel remained moored to the pier.

32. Figure 1 below is a photograph of the Vessel during the incident.

7



**Figure 1.** F/V OUR BOYS.

33.  Further investigation by the Coast Guard determined that the Vessel was owned by E. Seafood LLC and operated by Edwin Baboolall. Mr. Baboolall represented himself to Coast Guard responders as the owner of the Vessel. Representatives from the facility where the Vessel was moored also referred to the Vessel as belonging to Mr. Baboolall. The Coast Guard determined Mr. Baboolall was the owner and/or operator of the vessel within the meaning of OPA.

34.  The Vessel was found to have discharged approximately 100 gallons of oil into the bay. Further investigation determined that the Vessel had a capacity of 7,500

8

gallons of diesel fuel in four fuel tanks. The Coast Guard's Federal On-Scene Coordinator ("FOSC") determined there had been an actual discharge of oil.

35. The Coast Guard issued a Notice of Federal Interest ("NOFI") to Mr. Baboolall; Mr. Baboolall acknowledged and signed this NOFI.

36. The FOSC authorized the Coast Guard to engage contractors to mitigate, recover, and dispose of discharged oil and the ongoing substantial threat of discharge of oil from the Vessel.

37. On March 8, 2023, contractors placed boom around the Vessel to contain oil.

38. Mr. Baboolall informed the Coast Guard that the Vessel could release up to 6,000 gallons of diesel fuel, but that he did not know exactly what volume of oil was on board.

39. Mr. Baboolall further informed the Coast Guard that he did not have the financial means to recover or mitigate the Vessel or discharged oil. On March 9, 2023, the Coast Guard's FOSC issued a Notice of Federal Assumption ("NOFA") to Mr. Baboolall. Mr. Baboolall signed and acknowledged this NOFA.

40. On March 9, 2023, divers assessed the condition of the Vessel and determined it to be actively discharging oil. The Coast Guard also determined that the Vessel's condition was deteriorating, and its hull appeared to be cracking in multiple locations.

41. By March 9, 2023, contractors had removed 850 gallons of oily water and 2,000 pounds of oily debris and oil-saturated sorbent boom from the site. Divers

attempted to access the Vessel's tanks to pump out oil or oily water but were unable to safely access all tanks.

42.   On March 10, 2023, the Coast Guard determined that the Vessel was no longer seaworthy and would continue to present a substantial threat of continued discharge of oil as long as it remained in the waterway, given its ongoing discharge of oil and that its wooden hull appeared to be saturated with oil.

43.   The Coast Guard then determined that the most effective and practical way to mitigate the ongoing pollution threat was to remove the Vessel from the water entirely. The contractor engaged a subcontractor to bring heavy lift capability to remove the entire Vessel.

44.   On March 10, 2023, Mr. Baboolall signed a "Voluntary Release of Interest/Ownership in Vessel" form, abandoning the vessel.

45.   Between March 10 and March 15, 2023, the contractor continued to remove oily debris and replace sorbent materials and boom around the site.

46.   On March 15, 2023, the Coast Guard determined that the Vessel was still actively discharging oil.

47.   Between March 16 and March 21, 2023, the contractor continued to remove oily debris and replace sorbent materials and boom around the site.

48.   On March 21, 2023, the subcontractor arrived on the site with a crane barge and developed a salvage plan to remove the Vessel. They began moving other vessels docked nearby to make room for the lifting operation.

49. On March 22, 2023, divers surveyed the hull again and attached rigging for lifting. Contractors placed additional containment boom around the site as a precaution for the lifting operation.

50. On March 23, 2023, contractors installed protective matting and sorbent materials on shore to receive the Vessel's hull and further oily debris. Divers also re-entered the water to remove debris fouling the Vessel's propeller.

51. On March 24, 2023, contractors maneuvered the barge into place and hooked it up to rigging placed around the Vessel. The lift operation was estimated to take four hours to complete and could not be completed before the onset of darkness.

52. On March 25, 2023, the contractors began lifting the Vessel. However, once lifted, the Vessel's hull began to break apart before it could be brought ashore. The remaining debris was lowered back in place inside the containment booms to avoid further damage.

53. Contractors then began using an excavator to scoop remaining debris to shore and a vacuum truck to remove oil and oily water.

54. On March 26, 2023, the Coast Guard and its contractors continued removing oil and oily debris and cleaned out several of the vessel's tanks.

55. On March 27, 2023, a heavy lifting claw arrived on site and was used to pick up and remove the remaining large sections of hull from the water. Contractors also continued removing other oily debris.

56. On March 28, 2023, contractors used the excavator, claw, and divers to remove all remaining large pieces of the Vessel from the water and sea floor. They

then used small boats and skimmers to collect remaining small debris. Divers were sent to survey the sea floor and confirmed that all debris had been removed.

57. On March 29, 2023, the contractors began to decontaminate all equipment used in the operation and began demobilizing the equipment.

58. On March 30, 2023, remaining equipment was demobilized from the site.

59. From March 8 to March 29, 2023, the Coast Guard and its contractors removed a total of 145,090 pounds of oil-contaminated hazardous waste and 1,600 gallons of oil and oil-contaminated water.

60. The Coast Guard incurred removal costs of $884,894.66 in mitigating and removing oil discharged from the Vessel and the substantial risk of further discharge of oil from the Vessel from March 8 until such time as the threat was fully mitigated by removing the remains of the vessel from the water.

61. On August 31, 2023, the Coast Guard sent Defendant Edwin Baboolall a "Notice of Potential Liability" notifying him of these costs. Mr. Baboolall did not respond to this notice.

62. On January 11, 2024, the Coast Guard's National Pollution Funds Center issued Defendant Edwin Baboolall a bill for $884,894.66. The Coast Guard issued Mr. Baboolall a second bill for this amount on July 31, 2025. The Coast Guard also issued a bill in this amount to Defendant E. Seafood LLC on July 31, 2025.

## II.    Defendant E. Seafood LLC's Relationship to F/V OUR BOYS

63. Defendant E. Seafood LLC owned the Vessel on March 8, 2023, when the vessel sank and the pollution incident giving rise to this action occurred.

12

64. E. Seafood LLC owned the Vessel since December 7, 2008, when the company purchased the vessel from a previous owner, Maria Santos. A bill of sale for this transaction lists the address for E. Seafood LLC at 8718 Busch Oak Street, Tampa, Florida 33617.

65. The U.S. Coast Guard Certificate of Documentation for the Vessel, dated May 24, 2022 and valid through June 30, 2023—including all times material to this action—lists E. Seafood LLC as both the "owner" and the "managing owner" of the Vessel, with the same address listed above.

### III. Defendant Edwin Baboolall's Relationship to E. Seafood LLC and F/V OUR BOYS

66. E. Seafood LLC is a limited liability company registered under the laws of Florida. The company was first registered in 2008.

67. The Articles of Organization for E. Seafood LLC list 8718 Busch Oaks Street, Tampa, Florida 33617 as both the "Principal Office Address" and the "Mailing Address" for the company.

68. In the Articles of Organization for E. Seafood LLC, Mr. Baboolall is listed in all filings as both the registered agent and the manager; Mr. Baboolall's street address is also listed as 8718 Busch Oaks Street, Tampa, Florida 33617.

69. Mr. Baboolall is also listed as the company's only registered agent and only manager or managing member in every annual report for E. Seafood LLC from 2009 to 2023, with the same mailing address and principal place of business.

70.  No other registered agents, managers, members, nor any names other than Mr. Baboolall are listed in E. Seafood LLC's Articles of Organization or annual reports from 2009 to 2023.

71.  Public records indicate that 8718 Busch Oaks Street, Tampa, Florida 33617 is a single-family home.

72.  When Coast Guard pollution responders responded to the initial report and tracked the sheen to the Vessel, Mr. Baboolall represented himself as the owner of the Vessel.

73.  Upon interviewing Mr. Baboolall, they further determined that Mr. Baboolall was solely responsible for operating the Vessel. Mr. Baboolall stated that the Vessel had not been operated for several years.

74.  Mr. Baboolall further told the Coast Guard that F/V OUR BOYS ran aground during Hurricane Ian in late September 2022, approximately five months prior to the Vessel's sinking and subsequent pollution incident. The grounding resulted in damage to the Vessel's hull.

75.  Mr. Baboolall attempted temporary repairs to the hull damage in September 2022 himself and then moored the Vessel at the Superior Seafood docks.

76.  The Coast Guard pollution responders determined that the Vessel sank after its bilge pumps were unable to keep up with flooding from those repairs. Coast Guard responders reported that the vessel appeared to suffer from a lack of maintenance.

## FIRST CLAIM FOR RELIEF
## OIL POLLUTION ACT OF 1990

77. The United States realleges and incorporates by reference all preceding paragraphs of this Complaint.

78. At all material times, the F/V OUR BOYS was a "vessel" within the meaning of OPA. 33 U.S.C. § 2701(37).

79. At all material times, Defendant E. Seafood LLC was the owner of the vessel within the meaning of OPA. 33 U.S.C. § 2701(26).

80. At all material times, Defendant Edwin Baboolall, was an operator of the vessel within the meaning of OPA. 33 U.S.C. § 2701(26); *see also United States v. Nature's Way Marine, L.L.C.*, 904 F.3d 416, 420-21 (5th Cir. 2018).

81. Defendants E. Seafood LLC and Edwin Baboolall were thus both "responsible part[ies]" within the meaning of OPA. 33 U.S.C. § 2701(32)(A).

82. The sinking of F/V OUR BOYS on March 8, 2023, resulted in an actual discharge of oil from the Vessel into the waters of East Bay, an arm of Tampa Bay.

83. The sinking further presented a substantial threat of the discharge of oil from the vessel into those waters from the oil remaining in the Vessel's tanks and the oil-contaminated hull and other oil-contaminated debris created by the sinking. This threat persisted from March 8, 2023, to March 28, 2023, when the last oil-contaminated debris from the Vessel was removed from the water.

84. Tampa Bay, including East Bay, constitutes navigable waters of the United States within the meaning of OPA. 33 U.S.C. § 2701(21).

15

85.  None of the defenses enumerated in 33 U.S.C. § 2703(a) apply in this case: no third parties, acts of war, or acts of God were solely responsible for the discharge of oil and substantial threat of further discharge of oil from the Vessel.

86.  The Coast Guard National Pollution Funds Center incurred removal costs of $884,894.66 directly resulting from the Coast Guard's response to the discharge of oil and substantial threat of the discharge of further oil from the Vessel.

87.  These costs are "removal costs" within the meaning of OPA. 33 U.S.C. §§ 2701(31), 2702(b)(1).

88.  These removal costs were necessary to prevent, minimize, and/or mitigate the effects of the discharge of oil and substantial threat of further discharge of oil from the Vessel. These response actions were directed by the Coast Guard's FOSC and FOSC's representative ("FOSCR"). The FOSC, through the FOSCR, determined these actions to be necessary and consistent with the National Contingency Plan within the meaning of OPA.

89.  Pursuant to OPA, and under the circumstances of the sinking of F/V OUR BOYS presented herein, Defendants Edwin Baboolall and E. Seafood LLC are strictly liable to the United States, jointly and severally, without limitation, for all these removal costs, damages, and or disbursements sustained by the United States, by and through the U.S. Coast Guard, National Pollution Funds Center, as a result of the matters alleged in this Complaint.

90.  The United States' unreimbursed removal costs to date are $884,894.66. Pursuant to OPA, Defendants also owe the United States prejudgment interest on

16

this amount, calculated from February 10, 2024, 30 days after the Coast Guard sent Mr. Baboolall a bill for the recovery costs on January 11, 2024. 33 U.S.C. §§ 2705(b)(1), 2705(b)(4)(B).

91. Demobilization of the response was completed on March 30, 2023; thus, this Complaint was filed within the three-year statute of limitation established by OPA. 33 U.S.C. § 2717(f)(2).

## SECOND CLAIM FOR RELIEF
## OIL POLLUTION ACT OF 1990

92. The United States realleges and incorporates by reference all preceding paragraphs of this complaint.

93. An actual controversy exists between the United States and Defendants.

94. The United States seeks a declaratory judgment that Defendants Edwin Baboolall and E. Seafood LLC are liable to the United States for removal costs resulting from the discharge of oil from the Vessel and for removal costs or damages incurred in connection with efforts to prevent or mitigate a substantial threat of discharge of oil from the Vessel. The United States is entitled to this declaratory judgment pursuant to OPA, 33 U.S.C. § 2717(f)(2), which will be binding on any subsequent action or actions to recover further removal costs or damages.

## REQUEST FOR RELIEF

WHEREFORE Plaintiff United States of America respectfully requests that this Court:

17

(1) Enter a judgment against Defendants E. Seafood LLC and Edwin Baboolall, jointly and severally, in the amount of $884,894.66, plus all costs incurred by the United States by reason of this claim, including interest (including prejudgment interest), administrative costs, and attorney's fees;

(2) Enter a declaratory judgment that Defendants E. Seafood LLC and Edwin Baboolall are liable for removal costs or damages, that will be binding on any subsequent actions for removal costs or damages, plus interest; and

(3) Grant such other relief as may be appropriate.

Dated March 24, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

GREGORY W. KEHOE
United States Attorney
Middle District of Florida

Of Counsel:                                                /s/ Scott Perrygo
LCDR Elizabeth Ulan, USCG              SCOTT PERRYGO
National Pollution Funds Center          Trial Attorney
U.S. Coast Guard                              Civil Division, Torts Branch
2703 Martin Luther King, Jr. Ave. SE    U.S. Department of Justice
Washington, DC 20593                      175 N Street NE, 11th Floor
                                                       Washington, DC 20530
                                                       (202) 451-7576
                                                       (202) 616-4100 (fax)
                                                       Scott.Perrygo@usdoj.gov